**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| | : | **Chapter 13** |
| COZETTE MCAVOY, | : | |
| | : | |
| | : | **Bankruptcy No. 24-11597-AMC** |
| | : | |
| **DEBTOR** | : | |
| | : | |
| | : | |
| JASON ZAPPACOSTA & | : | |
| JOY GODOWSKI, | : | |
| | : | |
| **PLAINTIFFS** | : | |
| | : | |
| v. | : | **Adv. Pro. No. 24-00087-AMC** |
| | : | |
| COZETTE MCAVOY, | : | |
| | : | |
| **DEFENDANT** | : | |
| | : | |

**OPINION**

## I.   INTRODUCTION

Plaintiffs Jason Zappacosta and Joy Godowski (the "Zappacostas" or "Plaintiffs") move pursuant to Federal Rule of Civil Procedure 56 ("FRCP 56")[1] for summary judgment on their claim against Defendant Cozette McAvoy ("Defendant," together with the Zappacostas, the "Parties") that the debt she allegedly owes them is nondischargeable under § 523(a)(2)(A) as arising from false representations made by Defendant to Plaintiffs in connection with the sale of certain real property (the "Motion for Summary Judgment" or the "Motion").

As discussed below, Plaintiffs have met their burden to establish that there is no genuine dispute as to certain material facts that entitle Plaintiffs to judgment as a matter of law on three

---

[1] Made applicable in bankruptcy through Federal Rule of Bankruptcy Procedure 7056. *See* Fed. R. Bankr. P. 7056.

1

of the five elements necessary to succeed on a § 523(a)(2)(A) claim, including that (i) Defendant made false representations in the Seller's Disclosure, defined below; (ii) Defendant knew such representations were false or made them with at least a reckless disregard for their truth; and (iii) Defendant made the false representations with intent to deceive Plaintiffs.

However, genuine disputes of material fact remain as to whether Plaintiffs justifiably relied on Defendant's false representations, and therefore necessarily also as to whether damages were a proximate result of those false representations.

Accordingly, the Motion for Summary Judgment will be granted in part and denied in part. The Motion will be granted in favor of Plaintiffs and against Defendant on the first three requisite elements of § 523(a)(2)(A), including that: (i) Defendant made false representations; (ii) Defendant knew of their falsity; and (iii) Defendant intended to deceive Plaintiffs through those false representations. The Motion will be denied respecting the issues of whether Plaintiffs justifiably relied on Defendant's representations and any damages resulting from the representations.

## II.   UNDISPUTED FACTS

In June of 2018, Plaintiffs purchased certain residential real property located at 2841 Cambridge Street in Philadelphia, Pennsylvania, 19130 (the "Cambridge Property") from Defendant's single-member limited liability company, Gentian Capital, LLC ("Gentian"). Case No. 24-87, ECF 1, ¶ 13(a); ECF 1-3, Ex. C, ¶ 1.[2]

On June 9, 2020, Plaintiffs commenced a civil action against Defendant and Gentian, captioned *Jason Zappacosta, et al. v. Cozette McAvoy, et al.* (Pa. C.P., Philadelphia Cty., Civ.

---

[2] As discussed below, at the March 10, 2025 trial before the Philadelphia Court of Common Pleas, Defendant testified that she "was always the 100 percent owner of Gentian…[and] the only member of Gentian." *See* Case No. 24-87, ECF 13-6, Ex. B, 121:2-7.

Div., No.: 2006-00518) (the "State Court Action") in the Philadelphia Court of Common Pleas.[3]

*See* Case No. 24-87, ECF 1, ¶¶ 13(a), (k). Through the complaint filed in the State Court Action

(the "State Court Complaint"), Plaintiffs alleged that, in selling the Cambridge Property to

Plaintiffs, Defendant made false representations regarding her knowledge of the construction and

condition of the Cambridge Property, including, *inter alia*, the presence of improperly installed

stucco, a history of water infiltration and water leakage involving the roof, wood deterioration,

and mold infested pipes and vents. *See* Case No. 24-87, ECF 1-3, Ex. C, ¶¶ 57, 95, 98. The State

Court Complaint included claims brought by Plaintiffs against Defendant personally for: (i)

breach of contract ("State Court Count I"); (ii) breach of express and implied warranties of

fitness, merchantability, and habitability ("State Court Count II"); (iii) violation of the

Pennsylvania Real Estate Seller Disclosure Law, 68 P.S. § 7303 ("State Court Count III"); (iv)

negligent misrepresentation ("State Court Count V")[4]; (v) fraudulent misrepresentation ("State

Court Count VI"); (vi) fraudulent concealment ("State Court Count VII"); (vii) violation of

Pennsylvania's Unfair Trade Practice and Consumer Protection Law, 73 P.S. § 201-1, *et seq*.

("State Court Count VIII); and (viii) civil conspiracy ("State Court Count IX") (collectively, the

"State Court Counts"). Case No. 24-87, ECF 13-2, Ex. A.

On June 2, 2023, default judgment was entered in the State Court Action in favor of

Plaintiffs and against Defendant and Gentian (the "Default Judgment"). Case No. 24-87, ECF 1,

¶ 13(q-r).

---

[3] Through the State Court Action, Plaintiffs also brought claims against seven additional co-defendants, including: Michael P. Cohen; CC Philly Real Estate Realty, LLC, d/b/a Keller Williams Philly; Montevista, LLC; Tiago D. Patricio; Danielle Mills; Gregory Damis; and Fox and Roach, L.P., d/b/a Berkshire Hathaway Fox and Roach Realtors a/k/a Team Danis (the "State Court Co-Defendants"). *See* Case No. 24-87, ECF 1-1, Ex. A, 7. Plaintiffs successfully settled their claims against the State Court Co-Defendants. *See id.* at 9.

[4] The State Court Complaint includes two Counts labeled "Count V," presumably in error. The first Count that is labeled Count V, alleging liability for respondeat superior/vicarious liability, was not brought against Defendant. *See* Case No. 24-87, ECF 13-2, ¶¶ 142-158.

3

On July 3, 2023, Defendant and Gentian commenced an appeal of the Default Judgment to the Superior Court of Pennsylvania (the "Superior Court"), docketed as *Jason Zappacosta, et al. v. Cozette McAvoy, et al*. (Pa. Super., 1779 EDA 2023) (the "First Appeal"). Case No. 24-87, ECF 1, ¶ 13(w); ECF 1-1, Ex. A, 27.

On July 24, 2023, the Philadelphia Court of Common Pleas entered a molded verdict in the State Court Action, awarding Plaintiffs damages against Defendant and Gentian, jointly and severally, in the amount of $1,441,162.92, with post-judgment interest accruing at a daily rate of $175.67 from June 15, 2023 (the "Default Judgment Damages Amount"). Case No. 24-87, ECF 1-7, Ex. G.

On May 9, 2024 (the "Petition Date"), during the pendency of the First Appeal, Defendant filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code (the "Bankruptcy Case"). Case No. 24-11597, ECF 1.

On May 24, 2024, Plaintiffs filed a proof of claim in the Bankruptcy Case for a secured claim in the amount of $1,470,324.14 based on the Default Judgment and the Default Judgment Damages Amount (the "Original Zappacosta Claim").[5] *See* Case No. 24-11597, Claims Docket, Proof of Claim No. 2.

On June 13, 2024, Plaintiffs initiated this adversary proceeding (the "Adversary Proceeding") by filing a complaint (the "Adversary Complaint"), seeking: (i) exception to discharge of the debt owed to Plaintiffs (the "Zappacosta Debt") pursuant to § 523(a)(2)(A) of the Bankruptcy Code for false representations allegedly made by Defendant to Plaintiffs in connection with the sale of the Cambridge Property ("Adversary Count I"); and (ii) exception to discharge of the Zappacosta Debt pursuant to § 523(a)(2)(A) and § 523(a)(6) of the Bankruptcy

---

[5] The difference between the amounts in the Default Judgment Damages Amount and the Original Zappacosta Claim presumably reflects interest accrued.

Code for Defendant's alleged falsification of a mortgage for the purpose of frustrating any collection effort by Plaintiffs ("Adversary Count II").[6] *See* Case No. 24-87, ECF 1. More specifically, in Adversary Count I, Plaintiffs allege that the Zappacosta Debt was obtained by Defendant through false representations within the meaning of § 523(a)(2)(A) insofar as Defendant, pursuant to the sale of the Cambridge Property, falsely represented in the seller's disclosure (the "Seller's Disclosure") (i) that Gentian, of which Defendant was the sole member, did not possess any knowledge in the construction or development of the Cambridge Property, despite Gentian and Defendant having been responsible for the construction and development of the Cambridge Property; and (ii) that the roof of the Cambridge Property had never leaked, despite Defendant having been made aware of water infiltration events involving the roof of the Cambridge Property prior to sale to Plaintiffs. *See* Case No. 24-87, ECF 1, ¶¶ 13(d)-(g), ¶¶ 28-29.

On September 27, 2024, in the First Appeal, the Superior Court struck the Default Judgment and remanded the State Court Action to the Philadelphia Court of Common Pleas for a trial on the issues of liability and damages. *See* Case No. 24-11597, ECF 57, ¶ 8.

On March 10, 2025, trial was held in the remanded State Court Action in the Philadelphia Court of Common Pleas (the "Trial"). *See* Case No. 24-87, ECF 13-6, Ex. B. During the Trial, the Philadelphia Court of Common Pleas deemed admitted all factual averments in the State Court Complaint.[7] *See* Case No. 24-87, ECF 13-6, Ex. B, 66:11-15. Accordingly, this Court observes that the following factual averments in the State Court Complaint relevant to this

---

[6] The instant Motion for Summary Judgment concerns only Adversary Count I.

[7] At the Trial, presiding Judge Erdos for the Philadelphia Court of Common Pleas stated: "Under the circumstances, the factual averments are deemed admitted by the defendants" after discovering that three days prior to Trial, on March 7, 2025, Judge Cohen of the Philadelphia Court of Common Pleas had entered an order granting Plaintiffs' Motion to Strike Defendant's Answer in response to the State Court Complaint. *See* Case No. 24-87, ECF 13-6, Ex. B, 61:2-19, 66:11-15.

Adversary Proceeding were deemed admitted by the Philadelphia Court of Common Pleas

pursuant to the Trial:

15. Plaintiffs […] are the present owners and were, at all times relevant hereto, the bona-fide buyers and purchasers of the Cambridge Property.

16. Defendant […] is the managing-member and/or controlling member of Gentian. Defendant […] is also a member of […] Montevista[,] [LLC, a business entity organized under the laws of the Commonwealth of Pennsylvania]. […]

19. At all times material hereto, […] Gentian and Montevista are the developers, builders, owners, sellers, and/or contractors responsible for the construction, development, design, structural integrity, marketing, and sale of the Cambridge Property. […]

30. […] Montevista purchased the Cambridge Property on February 8, 2010[,] as an empty and vacant lot of land.

31. [Defendant, Gentian, Montevista, and Co-Defendant Tioga D. Patricio ('Patricio'), a member of Montevista (collectively, the 'Seller Defendants')] subsequently sought to obtain permits necessary to develop, construct, and erect a new three-story residential dwelling.

32. [T]he Seller Defendants served as the owners, general contractors, supervisors, builders, and developers of the Cambridge Property throughout its construction.

33. [S]ometime during the early phases of development, [...] Montevista transferred title of the Cambridge Property to […] Gentian via $1 quitclaim deed transfer.

34. […] Montevista and Gentian were controlled and operated by the same individuals, including specifically Defendant[.]

35. [T]he construction of [the] Cambridge Property was completed on or around November 2011.

36. [I]n 2011 through 2012, following the completion of construction, the Seller Defendants actively marketed and listed the Cambridge Property for sale.

37. [T]he Seller Defendants could not sell the property, and ultimately, in 2014, began seeking a tenant to occupy and rent the Cambridge Property.

38. [T]he Seller Defendants served as landlords and/or property managers over the Cambridge Property during any time which it was occupied by tenants.

39. [T]he property was occupied by one or more tenants between 2014 through 2018.

40. On May 2, 2018, the Seller Defendants […] listed the Cambridge Property […] and marketed the property for sale. […]

43. [After visiting the Cambridge Property on May 3, 2018,] Plaintiffs offered to purchase the Cambridge Property at its full ask listing price of $489,900.

6

44. On May 4, 2018, Plaintiffs and […] Gentian entered [into] an Agreement of Sale for the Purchase of the Cambridge Property.

45. Prior to the execution of the Agreement of Sale, Plaintiffs were provided with the Seller's Disclosure related to the Cambridge Property.

46. The Seller's Disclosure was executed by Defendant […], on behalf of […] Gentian.

47. In the Seller's Disclosure, the [Defendant] indicated that (a) the seller does not possess any expertise related to the construction and condition of the Cambridge Property[…]; (b) the seller has occupied the property since 2016 […]; the seller was not aware of any current/past problems with the roof, gutters, flashing, or downspout […]; the roof has never leaked […]; the seller was not aware of any past or present water infiltration in the house […]; and the seller was not aware of any mold tests or issues[.] […]

51. [Gentian] was an entity formed for the purpose of constructing, developing, and profiting off the property. […]

54. In 2015, the Cambridge Property was occupied by tenants.

55. [D]uring the period of time which the Cambridge Property was occupied, Defendant […] had personal interactions with the tenants in her capacity as landlord, property manager, and/or owner/owner's representative.

56. [At] various times in 2015 and 2016, Defendant […] and the Seller Defendants were personally made aware of mold complaints brought about by the tenants of the Cambridge Property.

57. [B]y 2016 at a minimum, the Seller Defendants were made aware of issues related to water infiltration and water leakage near or around the roof.

58. Finally, the Seller Defendants are related individuals and entities, of which Defendant […] was the representative, managing, and controlling member.

59. Despite the relatedness of the entities, Defendant […] never disclosed that she was the developer and builder of the Cambridge Property and a member of both […] Montevista and […] Gentian. […]

61. On May 17, 2018, Plaintiffs conducted a home inspection of the property.

62. As a result, there were major concerns raised regarding: (1) the condition of the roof downspout; (2) suspected soft spots and concealed damage to the front balcony fiberglass roof/decking; (3) concerns surrounding the installation and condition of the stucco. […]

65. On May 24, 2018, the Seller Defendants agreed to, *inter alia*, repair the spots on the roof and front deck and unclog and clear the drains and roof downspout. […]

71. […T]he Seller [Defendants] agreed to repair the roof issues and the purported aesthetic stucco issues.

74. On June 14, 2018, despite having certain repairs outstanding, Plaintiffs were required to close and settle on the Property.

7

75. On June 14, 2018, Plaintiffs and Seller Defendants executed an escrow agreement outlining the remaining repairs that would be completed and remedied by June 24, 2018.

76. On June 14, 2018, Plaintiffs settled on the property and became the owners of the Cambridge Property.

77. On June 25, 2018, Plaintiffs moved into the property and learned that some of the repairs were not yet completed.

78. [T]he repairman retained by the Seller Defendants abandoned and/or failed to complete all the repairs agreed upon prior to settlement.

79. As a result, Plaintiffs were required to retain their own repairman to complete some of the outstanding items designated for repair.

80. From August 2018 through September 2018, Plaintiffs made several attempts to communicate with Defendant […] about the status of the repairs.

81. On October 8, 2018, Defendant […] finally responded to Plaintiffs indicating that the repairs were not complete because of actions taken by Plaintiffs' realtor[.] […]

84. On December 21, 2018, Plaintiffs discovered water damage stemming from the roof of the Cambridge Property.

85. Believing that the roof had been repaired, Plaintiffs sought an alternative explanation as to the cause of the water infiltration.

86. On January 4, 2019, Plaintiffs retained a mason to inspect and remove several bricks to determine whether the water damage was a masonry issue.

87. A result of the mason's inspection suggested that the water damage was a result of leaks in the roof.

88. Based on that information, Plaintiffs then contacted one of the repairmen previously retained by the Seller Defendants who had purportedly repaired the soft spots along the roof.

89. Subsequently, Plaintiffs discovered that the roofer who was retained by the [Seller Defendants] to make repairs to the roof[] did not actually repair any of the soft spots along the fiberglass, and, in fact, was not familiar with fiber glass [*sic*] roofing. […]

91. In March 2019, Plaintiffs continued to experience water infiltration through the roof.

92. As a result, Plaintiffs retained a roofing company to make the necessary repairs to the roof, including, but not limited to; [*sic*] removal of the existing fiberglass system, installation of new AC sheathing, installation of lumber throughout the roofline and installation of a new parapet wall.

93. Following the repairs to the fiberglass, Plaintiffs continued to experience water infiltration and leaking issues.

94. As a result, Plaintiffs retained a home inspector to conduct a[n] in depth review of the stucco. […]

8

95. The Stucco Inspection Report concluded that the stucco cladding was improperly installed, did not contain the appropriate sheathing behind the stucco to prevent moisture damage, and caused moisture intrusion to come through the windows and interior wood areas on the first and second floor of the property.

96. The report recommended the removal of the stucco in the front and rear of the property, however, following the repairs to the stucco, it was discovered that there were water intrusions coming from all sides of the property.

97. As a result, Plaintiffs were required to remove the entire stucco and reframe the property and conduct a full stucco remediation.

98. Subsequently, the removal of the stucco revealed several other concealed defects with the property, including, but not limited to: wood deterioration around the supporting deck area; no flashing around a door; and mold infested pipes and vents.

99. As a result of the additional defects, Plaintiffs [were] required to replace the windows and remove the flooring throughout the house due to water and mold contamination.

*See* ECF Case No. 24-87, ECF 1-3, Ex. C.

On August 19, 2025, following the Trial, the Philadelphia Court of Common Pleas entered a verdict in favor of the Zappacostas and against Defendant and Gentian, finding Defendant and Gentian jointly and severally liable for: (i) State Court Count I for breach of contract; (ii) State Court Count II for breach of warranties; (iii) State Court Count VI for fraudulent misrepresentation; (iv) State Court Count VII for fraudulent concealment; and (v) State Court Count VIII for violation of Pennsylvania's Unfair Trade Practice and Consumer Protection Law (the "Trial Verdict"). *See* Case No. 24-87, ECF 13-7, Ex. C. The Trial Verdict did not include an accompanying opinion explaining the basis on which the Trial Verdict was reached. *See id.*

On September 5, 2025, Plaintiffs filed the instant Motion for Summary Judgment pursuant to FRCP 56. *See* Case No. 24-87, ECF 13. Through the Motion, Plaintiffs seek summary judgment in their favor on Adversary Count I for exception to discharge of the Zappacosta Debt pursuant to § 523(a)(2)(A), on the basis that Defendant is collaterally estopped from relitigating the issue of her liability for false representations under § 523(a)(2)(A) in light of the Trial Verdict

9

finding Defendant liable to Plaintiffs for fraudulent misrepresentation under Pennsylvania law.

*Id.*

On September 19, 2025, Defendant filed a Response to the Motion for Summary Judgment (the "Response"), discussed below in more detail. *See* Case No. 24-87, ECF 16.

On October 16, 2025, the Philadelphia Court of Common Pleas entered a molded verdict in the amount of $1,498,333.35 in connection with the Trial ("Trial Verdict Damages Amount"). *See* Case No. 24-11597, Claims Docket, Proof of Claim No. 2-2.

On November 13, 2025, Defendant appealed the Trial Verdict to the Superior Court, which appeal currently remains pending (the "Second Appeal").[8] *See* Case No. 24-11597, ECF 150, ¶ 7.

On January 21, 2026, Plaintiffs filed an amended Proof of Claim 2-2 for a secured claim in the amount of $1,498,333.35, based on the Trial Verdict Damages Amount (the "Amended Zappacosta Claim"). *See* Case No. 24-11597, Claims Docket, Proof of Claim No. 2-2.

## III.   DISCUSSION

For the reasons that follow, the Motion will be granted in part and denied in part. The record reveals that there is no genuine dispute as to material fact and that Plaintiffs are entitled to judgment as a matter of law on three of the five elements necessary to succeed on a nondischargeability claim pursuant to § 523(a)(2)(A), including that (i) Defendant made false representations in the Seller's Disclosure in relation to the sale of the Cambridge Property to Plaintiffs; (ii) Defendant knew the representations were false or made them with at least a reckless disregard for their truth; and (iii) Defendant intended to deceive Plaintiffs through the false representations. Genuine disputes of material fact remain, however, as to whether Plaintiffs

---

[8] Plaintiffs state that the appeal was docketed by the Superior Court as Appeal No. 2863. *See* Case No. 24-11597, ECF 150, ¶ 7.

justifiably relied on Defendant's false representations and whether damages were a proximate result of those false representations. Therefore, the issues of reliance and damages will proceed to trial.

### A.    Applicable Legal Principles

### i.    Federal Rule of Civil Procedure 56

Pursuant to FRCP 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The duty of a court on a motion for summary judgment is not to determine the truth of the matter or to resolve issues of fact, but to determine whether genuine and material issues are present. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).

A genuine issue of material fact arises when there is sufficient evidence that would permit a reasonable fact finder to return a verdict for the non-moving party. *Odom v. Philadelphia Parking Auth. (In re Odom)*, 571 B.R. 687, 692 (Bankr. E.D. Pa. 2017) (citing *Anderson*, 477 U.S. at 248). A material fact is one which could alter the outcome of the case, and a dispute is genuine when reasonable minds could disagree on the result. *Burtch v. Detroit Forming, Inc.* (*In re Archway Cookies*), 435 B.R. 234, 238 (Bankr. D. Del. 2010) (citing *Horowitz v. Fed. Kemper Life Assur. Co.*, 57 F.3d 300, 301 (3d Cir. 1995)).

The moving party has the burden of showing there is no genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its initial burden, the burden shifts to the non-moving party to go beyond the pleadings to provide counterevidence indicating there is a genuine issue to be resolved at trial. *See Celotex Corp.*, 477 U.S. at 324.

11

In resolving a motion for summary judgment, the Court must draw all reasonable inferences in favor of the non-moving party. *See In re Odom*, 571 B.R. at 692. However, "[t]he line between reasonable inferences and impermissible speculation is often 'thin,' but is nevertheless critical because 'an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment.'" *Prince v. BAC Home Loans Servicing, LP*, No. 16-CV-1544, 2018 WL 4154947, at *2 (E.D. Pa. Aug. 30, 2018). "Inferences must flow directly from admissible evidence." *Id*. at *3. Furthermore, if the evidence offered by the non-moving party is merely colorable, or is not significantly probative, summary judgment may be granted. *Chusid v. First Union Nat. Bank*, No. CIV. A. 97-4134, 1998 WL 42292, at *3 (E.D. Pa. Jan. 21, 1998).

### B.    Analysis

### i.    Collateral Estoppel

It is well-established that preclusion principles apply in bankruptcy proceedings. *See, e.g., In re Adesanya*, 613 B.R. 808, 826 (Bankr. E.D. Pa. 2020), *aff'd sub nom. Novartis Pharms. Corp. v. Adesanya*, 645 B.R. 733 (E.D. Pa. 2022) (citing *Murphy v. Snyder (In re Snyder),* 939 F.3d 92, 100 (2d Cir. 2019)). A trial court has "broad discretion to determine if collateral estoppel should apply." *In re Kamps*, 575 B.R. 62, 75 (Bankr. E.D. Pa. 2017) (citing *In re Cunningham*, 526 B.R. 578, 583 (Bankr. E.D. Pa. 2015), *aff'd sub nom. In the Matter of Cunningham*, 541 B.R. 792 (E.D. Pa. 2015)). "The party seeking to effectuate an estoppel has the burden of demonstrating the propriety of its application." *Id.* (citing *Suppan v. Dadonna*, 203 F.3d 228, 233 (3d Cir. 2000) (cleaned up)).

In determining whether collateral estoppel applies, the court should "examine the trial record 'with an eye to all the circumstances of the proceedings.'" *Bravo-Fernandez v. United*

*States*, 580 U.S. 5, 6 (2016) (quoting *Ashe v. Swenson*, 397 U.S. 436, 444 (1970)); *see also*

*Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir. 1981) ("[B]efore applying the doctrine of

collateral estoppel, the bankruptcy court must determine if the issue was actually litigated and

was necessary to the decision in the state court. To do this, the bankruptcy court should look at

the entire record of the state [court] proceeding, not just the judgment[.]"). "[W]hen a court

cannot ascertain what was litigated and decided, issue preclusion cannot operate." 18 *Moore's*

*Federal Practice* § 132.03[2][g], at 132-83 (3d ed.) (citing cases).

In the context of dischargeability proceedings, collateral estoppel permits a court to

accept findings established by a previous judgment as evidence of nondischargeability. *In re*

*Adesanya*, 613 B.R. at 826 (citing *In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997) (citing *In re*

*Halpern*, 810 F.2d 1061, 1064 (11th Cir. 1987))). In other words, where a trial court has made

detailed factual findings underpinning a ruling, a bankruptcy court may give preclusive effect to

those detailed factual findings and, "accepting them as true, determine independently whether the

findings establish the elements of nondischargeability[.]" *In re Jacobs*, 381 B.R. 128, 143

(Bankr. E.D. Pa. 2008).

Because the Trial Verdict was rendered by the Philadelphia Court of Common Pleas,

Pennsylvania law on collateral estoppel must be applied. *See, e.g., Est. of Tyler ex rel. Floyd v.*

*Grossman*, 108 F. Supp. 3d 279, 289 (E.D. Pa. 2015) ("[A]s the prior forum is the Pennsylvania

Court of Common Pleas for Philadelphia County, Pennsylvania preclusion law applies.") (citing

*Heck v. Humphrey*, 512 U.S. 477, 480 n.2 (1994)).

Under Pennsylvania law, collateral estoppel precludes relitigation of an issue of fact or

law determined in a prior action if the following conditions are met:

(1) the issue decided in the prior case is identical to the one presented in the later action;
(2) there was a final adjudication on the merits; (3) the party against whom the plea is

asserted was a party or in privity with a party in the prior case; (4) the party or person privy to the party against whom the doctrine is asserted had a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment.

*In re Kamps*, 575 B.R. at 76 (citing *Off. of Disciplinary Couns. v. Kiesewetter*, 585 Pa. 477, 889 A.2d 47, 50–51 (2005)). If the above conditions are satisfied, the prior determination of the factual or legal issue is conclusive in a subsequent action, "whether on the same or a different claim." *Id.* (quoting *Pennsylvania State Univ. v. Cnty. of Ctr.*, 532 Pa. 142, 615 A.2d 303, 306 (1992) (quoting Restatement (Second) of Judgments § 27 (1982)).

Through the Motion for Summary Judgment, Plaintiffs argue that Defendant is collaterally estopped by the Trial Verdict from relitigating the elements of false representation under § 523(a)(2)(A) because the Pennsylvania Court of Common Pleas found Defendant liable for fraudulent misrepresentation under Pennsylvania law. *See* Case No. 24-87, ECF 13. Defendant responds that collateral estoppel is not appropriate because, *inter alia*, Defendant was not given a full and fair opportunity to litigate through the Trial due to alleged procedural errors made by the Philadelphia Court of Common Pleas. Case No. 24-87, ECF 16, 3-4.[9]

As noted above, the Trial Verdict issued by the Philadelphia Court of Common Pleas did not include an accompanying opinion explaining the factual findings and reasoning underpinning the decision. As such, the Trial Verdict, standing alone, does not contain sufficient findings to permit this Court to determine whether the issues necessary to sustain a § 523(a)(2)(A) dischargeability claim were necessary to the judgment for the entire Trial Verdict Damages Amount. However, as noted above, in reaching the Trial Verdict, the Philadelphia Court of

---

[9] The procedural errors alleged by Defendant include: (i) an "[e]x parte damages hearing without notice (June 6, 2023);" (ii) "[a]doption of damages from that hearing in the [Trial Verdict];" (iii) "[s]triking of the Answer and New Matter immediately before trial;" "[g]rant of Motion in Limine preventing presentation of damages evidence;" and "[e]xclusion of 29 of 31 defense exhibits." Case No. 24-87, ECF 16, 3-4.

14

Common Pleas deemed admitted the factual averments set forth in the State Court Complaint. *See* Case No. 24-87, ECF 13-6, Ex. B, 66:11-15. Accordingly, consistent with the principle that a court should examine the entire record of the prior proceeding rather than merely the resulting judgment, the Court will consider whether those admitted factual averments are entitled to preclusive effect in this Adversary Proceeding. *See In re Jacobs*, 381 B.R. at 143.

As discussed below, in applying the five elements of collateral estoppel, the Court concludes that Defendant is precluded from challenging the factual findings made by the Philadelphia Court of Common Pleas, consisting of the factual averments in the State Court Complaint deemed admitted through the Trial.

Regarding the first element of preclusion under Pennsylvania law, there is no question that the facts necessary to determine Defendant's liability for false misrepresentation in the State Court Action are identical to those this Court must determine to consider whether § 523(a)(2)(A) renders the Zappacosta Debt nondischargeable based on false representations, as both actions involve the exact same events and transactions. In regard to the second element in the preclusion analysis, the Trial Verdict represents a final adjudication on the merits; the fact that Defendant initiated the Second Appeal does not impact the finality of the judgment. *See, e.g., In re Turner*, 326 B.R. 563, 570 (Bankr. W.D. Pa. 2005) (holding that a judgment rendered in a state court proceeding is final as to the matters decided therein unless and until overturned) (collecting cases). Regarding the third element of preclusion, there is no dispute that the relevant Parties in the instant Adversary Proceeding, Plaintiffs and Defendant, were parties to the proceedings underlying the Trial Verdict.

As for the fourth element of preclusion, Defendant argues that she was not given a full and fair opportunity to litigate the issues underlying the Trial Verdict due to alleged procedural

15

errors by the Philadelphia Court of Common Pleas.[10] Under Pennsylvania law, for purposes of collateral estoppel, a party enjoyed a full and fair opportunity to litigate in a previous proceeding "if a party could 'litigate issues in the manner available in a court of record' and had sufficient incentive to do so vigorously in the first proceeding." *Adelphia Gateway, LLC v. Pennsylvania Env't Hearing Bd.*, 62 F.4th 819, 828 (3d Cir. 2023); *see also, e.g., Pennsylvania Laws. Fund for Client Sec. v. McKee*, No. 2:23-CV-00535-CFK, 2023 WL 6520492, at *7 (E.D. Pa. Oct. 5, 2023) (finding that a party who had the opportunity to testify, present witnesses, and put forth evidence had full and fair opportunity to litigate for purposes of issue preclusion). Here, the Trial Transcript reveals that Defendant was given and that she availed herself of the opportunity to testify as to the facts of the case pertaining to the issue of fraudulent representation, as well as to file post-trial briefing on the issue of liability on all causes of action at issue in the Trial, including fraudulent misrepresentation. *See* Case No. 24-87, ECF 13-6, 112-185; 190. Because Defendant could litigate the issues in the manner available in the court of record and had incentive to do so vigorously, the Court finds that Defendant received a full and fair opportunity to litigate.

Finally, as for the fifth element of preclusion, the determination by the Philadelphia Court of Common Pleas to deem admitted all facts in the State Court Complaint was clearly essential to reaching the Trial Verdict, because the court necessarily relied on those deemed admissions as the operative facts establishing liability.

For the above reasons, Defendant is collaterally estopped from relitigating the factual findings by the Philadelphia Court of Common Pleas through the Trial, which factual findings consist of the factual averments set forth in the State Court Complaint.

---

[10] *See supra* note 9.

ii.       **Nondischargeability Under § 523(a)(2)(A)**

"Upon application of collateral estoppel in a nondischargeability action, the Court must determine whether a judgment entered in a prior proceeding and the accompanying underlying findings are sufficient to render a debt nondischargeable." *In re Adesanya*, 613 B.R. at 826 (citing *In re Aiello*, 533 B.R. at 494–95). Section 523(a)(2)(A) of the Bankruptcy Code provides that:

> a discharge under […] this title does not discharge an individual debtor from any debt [...] for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by […] false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523(a)(2)(A).

To succeed on a false representation claim under § 523(a)(2)(A), a plaintiff must establish the existence of five elements by the preponderance of the evidence: (1) the debtor made a false representation; (2) at the time of the representation, the debtor knew, or believed, such representation was false; (3) the false representation was made with the intent and purpose of deceiving the creditor; (4) the creditor justifiably relied upon the representation; and (5) the creditor sustained damages as a proximate result of the false representation. *In re Adesanya*, 613 B.R. at 827 (citing *In re Didio*, 607 B.R. 804, 816 (Bankr. E.D. Pa. 2019)).

Once it is established that specific money, property, services, or an extension, renewal, or refinancing of credit has been obtained by false representations, false pretenses, or fraud, any debt arising therefrom is excepted from discharge. *In re Hay Phat*, 623 B.R. 371, 377 (Bankr. E.D. Pa. 2021) (citing *Fledderman v. Glunk (In re Glunk),* 343 B.R. 754, 758 (Bankr. E.D. Pa. 2006)).

a.       **False representations**

Adversary Count I of the Adversary Complaint alleges Defendant falsely represented in the Seller's Disclosure that (i) Gentian, of which Defendant was the sole member, did not possess any knowledge in construction or real estate development related to the Cambridge Property,[11] and (ii) the roof of the Cambridge Property had never leaked during Gentian's ownership. Case No. 24-87, ECF 1, ¶ 28-29.

First, based upon the factual averments in the State Court Complaint, given preclusive effect in this Adversary Proceeding, there is no genuine dispute that Defendant, the sole, controlling, and managing member of Gentian, who executed the Seller's Disclosure on behalf of Gentian as the seller of the Cambridge Property, falsely represented that Gentian had no knowledge or expertise in construction or real estate development in connection with the Cambridge Property. *See* Case No. 24-87, ECF 1-3, Ex. C, ¶ 46. Specifically, in the Seller's Disclosure, in response to the question, "[d]oes Seller[12] possess expertise in contracting, engineering, architecture, environmental assessment or other areas related to the construction and conditions of the property and its improvements?" Defendant checked "[n]o." Case No. 24-87, ECF 1-3, Ex. C, 53. This was categorically false in light of the record before the Court.[13] Gentian, as the developer and builder of the Cambridge Property, was engaged in and responsible for the construction, development, design, and structural integrity of the Cambridge Property. *See, e.g.,* Case No. 24-87, ECF 1-3, Ex. C, ¶¶ 19, 32, 58.

---

[11] In the Adversary Complaint, Plaintiffs aver that Defendant stated "*she did not possess any knowledge* in construction or real estate development." Case No. 24-87, ECF 1, ¶ 28-29 (emphasis added). More accurately, Defendant stated in the Seller's Disclosure that the "Seller" of the Cambridge Property, Gentian, had no "expertise" in any area related to the "construction and conditions of the property and its improvements." Case No. 24-87, ECF 1-3, Ex. C, 53.

[12] The "Seller" for purposes of the Seller's Disclosure was Gentian. *See* Case No. 24-87, ECF 1-3, Ex. C, ¶ 58.

[13] The Court notes that statements made by Defendant in the Seller's Disclosure on behalf of Gentian, of which LLC Defendant is the sole, controlling, and managing member, are attributable to Defendant. *See, e.g., In re Grasso*, 497 B.R. 434, 443 (Bankr. E.D. Pa. 2013) (holding debtor's status as managing member of LLC sufficient to find the LLC an insider of debtor and therefore sufficient to attribute statements made by the LLC to debtor for purposes of § 523(a)(2)(A) analysis).

Plaintiffs have therefore established that Defendant falsely represented in the Seller's Disclosure that Gentian had no expertise in any area related to the construction and condition of the Cambridge Property.

Second, based upon the factual averments in the State Court Complaint given preclusive effect in this Adversary Proceeding, there is no genuine dispute that Defendant falsely represented the roof of the Cambridge Property had never leaked during Gentian's ownership.

Gentian owned the Cambridge Property by the time construction was completed in November 2011. Case No. 24-87, ECF 1-3, Ex. C, ¶¶ 33, 35. By at least 2016, Defendant and Gentian were made aware of issues related to water infiltration and water leakage involving the roof of the Property. *Id.* at ¶ 57. Nevertheless, in the Seller's Disclosure, in response to the question, "[h]as the roof ever leaked during your ownership?" Defendant checked "[n]o." Case No. 24-87, ECF 1-3, Ex. C, 53. Given these facts, Defendant's assertion in the Seller's Disclosure that the roof had not leaked during Defendant's ownership of the Cambridge Property was false. Instead, the record reveals that the roof had leaked by at least 2016, approximately two years before Plaintiffs purchased the Cambridge Property from Defendant.

Plaintiffs have therefore established that Defendant falsely represented in the Seller's Disclosure that the roof of the Cambridge Property had not leaked during Gentian's ownership.

In summary, Plaintiffs have satisfied the first element of § 523(a)(2)(A) in showing that Defendant falsely represented in the Seller's Disclosure that: (i) Gentian had no expertise related to the construction and conditions of the Cambridge Property; and (ii) the roof of the Cambridge Property had never leaked during Gentian's ownership.

b.      **Knowledge and Intent**

19

To succeed on a § 523(a)(2)(A) claim, a plaintiff must show that the debtor knew of the falsity of the representation at issue. *See* 11 U.S.C. § 523(a)(2)(A). As courts within the Third Circuit have observed:

> To satisfy scienter or the knowingly false element of § 523(a)(2)(A), a misrepresentation must be made with either actual knowledge of its falsity, or with such reckless disregard of the truth that the law will impute the knowledge to the responsible party. *New York Life Ins. Co. v. Marotta*, 57 F.2d 1038, 1039 (3d Cir. 1932). "In assessing a debtor's knowledge of the falsity of the representation... the Court must consider the knowledge and experience of the debtor." *FTC v. Duggan (In re Duggan)*, 169 B.R. 318, 324 (Bankr. E.D.N.Y. 1994). "A false representation made under circumstances where a debtor should have known of the falsity is one made with reckless disregard for the truth, and this satisfies the knowledge requirement." *Id.*

*In re Brown*, 591 B.R. 587, 595 (Bankr. M.D. Pa. 2018) (citing *In re Santos*, 304 B.R. 639, 664 (Bankr. D.N.J. 2004)).

Furthermore, a plaintiff must also show that the debtor made the false representation with an intent to deceive the creditor. *See* 11 U.S.C. § 523(a)(2)(A). Because a debtor "will rarely, if ever, admit that deception was his purpose," intent to deceive may be inferred from the totality of the surrounding facts and circumstances. *In re Hay Phat*, 623 B.R. at 379–80 (citing *Starr v. Reynolds (In re Reynolds)*, 193 B.R. 195, 200 (D.N.J. 1996)). A debtor's reckless disregard for the truth of his representations to creditors will satisfy § 523(a)(2)(A)'s requisite intent to deceive when, with some due diligence, debtor should have known his statements were false. *Id. (citing In re Bocchino*, 794 F.3d 376, 379–82 (3d Cir. 2015)).

"[R]eckless disregard for the truth of a statement will fulfill both the knowledge element and the intent to deceive element." *In re Hay Phat*, 623 B.R. at 380 (citing *De La Cruz v. Cohen (In re Cohen)*, 185 B.R. 171, 177-78 (Bankr. D.N.J. 1994)).

Regarding Defendant's false representation in the Seller's Disclosure that Gentian possessed no expertise related to the construction and conditions of the Cambridge Property, as

20

discussed above, the record reveals instead that Gentian was responsible for the construction, development, design, and structural integrity of the Cambridge Property. *See, e.g.,* Case No. 24-87, ECF 1-3, Ex. C, ¶¶ 19, 32. As the sole, controlling, and managing member of Gentian, it would simply be inconceivable for Defendant not to have known of Gentian's expertise. At minimum, Defendant should have known of the falsity of the statement given her position as Gentian's sole, controlling, and managing member, and so the statement was therefore made with at least a reckless disregard for the truth. Denying the truth of Gentian's extensive involvement in the construction and development of the Property would have benefited Defendant by allowing her to more plausibly deny in the Seller's Disclosure her and Gentian's awareness of any defects in the Property, thereby making the Property more marketable, further supporting a finding of Defendant's intent to deceive. Because the circumstances support at minimum a finding of Defendant's reckless indifference to the truth of her representation, both the requisite knowledge and intent under § 523(a)(2)(A) have been satisfied in regard to Defendant's false statement that Gentian had no expertise related to the construction and conditions of the Cambridge Property.

Next, regarding Defendant's false representation in the Seller's Disclosure that the roof of the Cambridge Property did not leak during Gentian's ownership, the record supports a finding that Defendant made this statement with at least a reckless disregard for the truth. In the Seller's Disclosure, Defendant stated Gentian was the landlord for the Cambridge Property at the time of sale to Plaintiffs. Case No. 24-87, ECF 1-3, Ex. C, 53. Furthermore, as averred in the State Court Complaint and given preclusive effect in this Adversary Proceeding, "Defendant [] had personal interactions with the tenants in her capacity as landlord, property manager, and/or owner/owner's representative" on behalf of Gentian, and by 2016, Defendant and Gentian were made aware of issues related to water infiltration and water leakage near or around the roof. *See* Case No. 24-87,

21

ECF 1-3, Ex. C, ¶¶ 55-57. These circumstances support a finding that Defendant made the statement in the Seller's Disclosure that there were no leaks in the roof of the Cambridge Property with at least reckless disregard for its truth, as she should have, and would have, known, given her interactions with tenants, of the statement's falsity. A finding of Defendant's intent to deceive is further supported by the fact that Defendant made the false statement in connection with her efforts to sell the Property, likely motivating her to conceal any prior leaks in the roof to make the Property more marketable. Therefore, both the requisite knowledge and intent under § 523(a)(2)(A) have been satisfied in regard to Defendant's false statement that the roof of the Cambridge Property had not leaked during Gentian's ownership.

Plaintiffs have therefore satisfied the second element of § 523(a)(2)(A) by showing that Defendant possessed the requisite knowledge and intent in making the false statements in the Seller's Disclosure.

### c.     Reliance

To satisfy the justifiable reliance element of § 523(a)(2)(A), the plaintiff must show that it "believed the representation made by the other party and that the representation led the deceived party to take certain action." *In re Dizinno*, 532 B.R. 231, 238 (Bankr. M.D. Pa. 2015). As summarized by one court, "[j]ustifiable reliance is a less demanding standard than reasonable reliance; it requires only that the creditor did not blindly rely upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation. Under the justifiable reliance standard, a creditor has no duty to investigate unless the falsity of the representation would have been readily apparent." *In re Dizinno*, 532 B.R. at 238 (quoting *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010) (quoting *Field v. Mans*, 516 U.S. 59, 71 (1995))) (cleaned up).

Here, the record reveals that, at some point before execution of the agreement of sale, Plaintiffs were supplied with the Seller's Disclosure, executed by Defendant on behalf of Gentian. Case No. 24-87, ECF 1-3, Ex. C, ¶¶ 45-46. Subsequently, on May 17, 2018—prior to closing—Plaintiffs conducted a home inspection of the Cambridge Property. *Id.* at ¶ 61. As stated by Plaintiffs in the State Court Complaint, pursuant to the home inspection, "[m]ajor concerns [were] raised" regarding the downspout, "soft spots" on the roof, "concealed damage to the balcony fiberglass roof/decking," and installation of stucco. *Id.* at ¶ 62. Nevertheless, on June 14, 2018, Plaintiffs and Gentian closed and settled on the Cambridge Property. *Id.* at ¶ 74.

Given that Plaintiffs conducted a home inspection of the Cambridge Property between receiving the Seller's Disclosure and closing on the sale, and furthermore, given Plaintiffs' admission in the State Court Complaint that "major concerns" were raised by the home inspection in specific regard to the condition of the roof, there remains in this case a genuine dispute as to whether Plaintiffs justifiably relied on Defendant's false representations in the Seller's Disclosure, or whether Plaintiffs relied on the statements in the Seller's Disclosure at all. On the record currently before the Court, it is not clear whether Plaintiffs relied on or were otherwise justified in their reliance on the false representations in the Seller's Disclosure, or if their independent inspection should instead have made the falsity of the statements readily apparent. *See In re Dizinno*, 532 B.R. at 238.

Therefore, Plaintiffs have failed at this stage to establish the requisite justifiable reliance to succeed on a claim under § 523(a)(2)(A). Summary judgment will accordingly be denied as to the issue of justifiable reliance.

**d.      Damages**

23

Because the Court cannot presently conclude that no genuine dispute exists regarding whether Plaintiffs justifiably relied on the Seller's Disclosure in purchasing the Cambridge Property, the Court likewise cannot conclude that no genuine dispute exists respecting whether and in what amount damages were actually caused by the false representations.[14]

## IV.    CONCLUSION

For the reasons stated above, the Motion for Summary Judgment will be granted in part and denied in part. The Motion will be granted in favor of Plaintiffs and against Defendant on the first three elements of § 523(a)(2)(A), with respect to which Plaintiffs have shown that there are no genuine disputes as to material fact that: (i) Defendant made false representations; (ii) Defendant had the requisite knowledge of the falsity of those representations; and (iii) Defendant intended to deceive Plaintiffs by way of those false representations. The Motion will be denied in regard to the final two elements of § 523(a)(2)(A), the Court finding that genuine disputes of material fact exist as to whether (iv) Plaintiffs justifiably relied on Defendant's false representations and (v) damages proximately resulted from the false representations. The issues of justifiable reliance and damages will accordingly proceed to trial.

Date:  May 7, 2026

_____
Honorable Ashely M. Chan
United States Bankruptcy Judge

---

[14]As noted above, the Trial Verdict found for Plaintiffs on multiple causes of action. However, it did not break down which damages were attributable to which causes of action, thereby making it impossible for this Court to determine whether the entire Trial Verdict, which the Plaintiffs seek to be deemed nondischargeable, could have been supported by the false misrepresentation count.

24